OPINION
{¶ 1} Christine Brooks appeals, pro se, from a judgment of the Montgomery County Area One Court, which concluded that she owed $307 to Woodyard Electric, Inc.
 {¶ 2} Ms. Brooks hired Woodyard Electric, owned by Gerry Woodyard, to perform electrical work in a bedroom at her home in Brookville, Ohio. Woodyard Electric had previously performed work in other areas of her home. On this occasion, Woodyard Electric was hired to rewire the bedroom and to install two ceiling lights. Ms. Brooks was unsatisfied with the work done on her bedroom for several reasons. First, the workmen ran wiring through the bedroom's tongue and groove ceiling despite her having told them that the wiring should be routed a different way. The Woodyard Electric employees separated the ceiling with a crowbar, causing the wood to split, and then threw away the broken pieces of the ceiling. Mr. Woodyard, Ms. Brooks, and a Michael D'Amico retrieved the broken pieces from the garbage. Although Mr. Woodyard offered to make repairs to the ceiling, Ms. Brooks chose to perform those repairs herself.
 {¶ 3} The second problem with Woodyard Electric's performance, according to Ms. Brooks, was that they installed the wrong color cover plate on the fixtures in the bedroom. The cover plates that Woodyard Electric had installed in the rest of the house were white, while those in the bedroom were beige or ivory. Ms. Brooks replaced the cover plates herself, although Mr. Woodyard testified that he would have replaced them at no cost.
 {¶ 4} Third, Woodyard Electric's employees used a crowbar and saw to remove trim boards in the room. This resulted in damage to the trim. The trim was then reattached with nails that were bent and gouged the wood. Mr. Woodyard admitted that his employees had been negligent in relation to the trim. He offered to repair the trim, but Ms. Brooks indicated that she wanted a carpenter to do the work. Mr. Woodyard therefore hired Ms. Brooks' carpenter, at a cost of $175 to Woodyard Electric, and the trim was replaced. The carpenter also performed some repairs to the walls of the room where holes had been cut into wall panels near the window and fireplace. Ms. Brooks testified that Woodyard Electric had been hired to rewire the room and had not had a reason to cut new holes into the walls. However, Mr. Woodyard testified that Ms. Brooks had informed him prior to the beginning of the project that she would be stuccoing the walls so that holes would not matter. In any case, the panels in question were removed and replaced by the carpenter at Woodyard Electric's expense.
 {¶ 5} The total bill for the work performed by Woodyard Electric was approximately $1107. Ms. Brooks paid approximately $800, leaving a balance of $307. The $307 represented the amount that Ms. Brooks felt that she had expended in making repairs, including both materials and her labor. She calculated her time at $46.10 an hour, an amount that she arrived at by figuring out the hourly rate of Woodyard Electric's employee labor.
 {¶ 6} On September 23, 2002, Ms. Brooks filed her small claims complaint in the Montgomery County Area One Court. She sought, in effect, a declaratory judgment from the court stating that she did not owe Woodyard Electric the $307 balance on her bill. Woodyard Electric counterclaimed for the $175 that it had paid for a carpenter to make repairs to the home. At trial, Ms. Brooks testified regarding the above facts. Mr. Woodyard testified that he did not believe that he should have to credit Ms. Brooks for $307 because he had offered to make the repairs that she expended time and money making. He further argued that part of the repairs had been for redoing caulking and priming and had been necessary because Ms. Brooks had nonsensically caulked and primed the room prior to the electrical work being done. The trial court concluded that Ms. Brooks owed Woodyard Electric $307, although we are unable to determine how the court arrived at its decision. The court further denied Woodyard Electric's counterclaim, finding that Mr. Woodyard had admitted the negligence of his workmen.
 {¶ 7} Ms. Brooks appeals, pro se, from the trial court's decision. She has not articulated any assignments of error. She furthermore has filed a videotape of the proceedings in the trial court and has not had those proceedings transcribed. We will address Ms. Brooks' appeal despite these deficiencies. Woodyard Electric has not filed a responsive brief.
 {¶ 8} Ms. Brooks argues that the trial court ignored the problems with the tongue and groove ceiling that she asserts formed the basis of the $307 that she does not believe she owes to Woodyard Electric. She contends that the trial court made no mention of the ceiling in its decision and that the trial court mistakenly discussed the $175 that was paid for the carpenter when that amount was not in dispute. She further contends that Woodyard Electric breached its contract and that she had the option, of which she availed herself, of doing the repair work herself and deducting her time from the bill. Mr. Woodyard argued at trial that he had offered to do the work to the ceiling but had been refused by Ms. Brooks. He therefore argued that he should not be responsible for the repairs she made herself. He also testified that some of the work involved redoing caulking and priming that Ms. Brooks had done before his workmen did any wiring work and that would have therefore had to be redone regardless of any negligence on the part of Woodyard Electric. It is somewhat unclear, however, whether the caulking and priming were on the ceiling or on wall panels that were repaired by the carpenter hired by Woodyard Electric. It is further unclear from the record whether items other than the ceiling, such as the replacement of the cover plates on the light fixtures, are included in the $307 that Ms. Brooks is attempting to charge for her repairs.
 {¶ 9} With regard to the trial court's discussion of the $175 carpenter bill, the trial court was addressing Woodyard Electric's counterclaim, and it concluded in favor of Ms. Brooks that Woodyard Electric should not be reimbursed for the carpenter. With regard to the $307 disputed by Ms. Brooks, the trial court concluded only that "the balance of the original amount of the contract of $307 remains due and owing to Woodyard Electric." From this, we are unable to ascertain exactly why the trial court determined that Woodyard Electric should not be responsible for reimbursing Ms. Brooks for repairs she made to the roof. However, we have reviewed the videotape of the proceedings, and we are thus able to draw some conclusions regarding why the trial court reached the decision it did.
 {¶ 10} Because the trial court found in favor of Woodyard Electric, we can only conclude that the court credited Mr. Woodyard's version of events. Mr. Woodyard testified that he had assisted Ms. Brooks and Mr. D'Amico in locating the broken pieces of the ceiling and determining whether those pieces could be fit back onto the ceiling. He further testified that he had offered to do the repairs to the ceiling himself but his offer had been declined. Mr. Woodyard argued, and the trial court presumably agreed, that he should not be responsible for the time and money Ms. Brooks expended making repairs to the ceiling herself when he had offered to make those repairs. Thus, the trial court could have reasonably concluded that Ms. Brooks had failed to mitigate her damages by choosing to perform repairs herself at a cost of $307 rather than allowing Woodyard Electric to perform those repairs.
 {¶ 11} Given the evidence presented at trial, we find that the trial court could reasonably have concluded that Ms. Brooks should be required to pay the $307 balance of her bill from Woodyard Electric.
 {¶ 12} Ms. Brooks' argument is overruled.
 {¶ 13} The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.